UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:10-CV-00763-TBR

VICKI L. COUCH,                                                                      PLAINTIFF

v.

PATRICK R. DONAHOE, Postmaster General
United States Postal Service                                                    DEFENDANT.

## MEMORANDUM OPINION

This matter comes before the Court on a Motion for Summary Judgment by Defendant (DN 20).  Plaintiff has filed her response (DN 26), to which Defendant has replied (DN 28). This matter is now ripe for adjudication.  For the reasons that follow, Defendants' Motion is GRANTED.

## BACKGROUND

Plaintiff Vicki Couch, an African American female, has worked at the United States Postal Service since 1993. Couch currently holds a permanent, bid position as a Mail Processing Clerk in the Gardiner Lane facility in Louisville. Plaintiff alleges that over the last five years, she has been subjected to discriminatory harassment based on her gender and race and in retaliation for her complaints to the EEOC. During her tenure at the USPS, Plaintiff has filed a number of complaints with the Equal Employment Opportunity Commission (EEOC). The four most recent of these complaints, filed in July 2008, October 2009, June 2010, and October 2010, contain much of the factual basis for Plaintiff's allegations in this lawsuit.[1]

---

[1] The agency issued a final decision in favor of the USPS regarding Plaintiff's 2008 and 2009 complaints. Both of these decisions were affirmed by the Office of Federal Operations (OFO) on appeal. Plaintiff's two 2010 EEOC complaints were both dismissed for failure to state a claim. Both dismissals were affirmed on appeal to the OFO.

Plaintiff's 2008 EEOC claim focused mainly on Plaintiff's conflict with and harassment by co-worker Vickie Grimes[2] and what she perceives as her supervisors' inadequate responses while she was working at the Air Mail Facility (AMF). On April 6, 2008, Grimes went out of her way to attempt physical contact with Plaintiff. Although no physical contact was made, Plaintiff considered the behavior hostile, and she informed her supervisor, Mike Miller, about the incident. Miller indicated he would handle the situation and requested she not report the incident to another supervisor, Ken Creten. Miller did, however, inform Creten of the incident "a few days later." On April 11, 2008, Grimes again attempted to bump into Plaintiff while Plaintiff was working alongside Union Steward Jay Parran. When Plaintiff and Parran reported Grimes's conduct to Miller, he told them he would speak to Grimes.

Five days later, dissatisfied with the response from management, Plaintiff called the Plant Manager and the Office of the Inspector General (OIG). The OIG did not return Plaintiff's phone call. The Plant Manager returned her call the next day and informed Plaintiff that Acting Manager at AMF, William Needy, was investigating the situation. During a later conversation with Needy, he indicated the OIG thought her complaints were funny. Although members of management said they would schedule a meeting where Grimes and Plaintiff could discuss their conflict, no such meeting took place. The record shows that during this time, management took statements from Plaintiff, Grimes, and Parran. After the investigation revealed that no physical contact had been made, management decided to take no further action.

Plaintiff asserts that she was so upset by management's lack of response that in late April 2008, she failed an examination to qualify as a window clerk at the AMF. Plaintiff does not allege the test or her failure was discriminatory. In mid-May 2008, Plaintiff asked Creten to

---

[2] Grimes is an African American female who works for the USPS as a "casual employee," as opposed to a career permanent employee like Plaintiff.

[2]

move Grimes to a different area because Grimes was working next to her. Initially, Creten declined, and Plaintiff became loud and caused a scene. Creten took Plaintiff to his office, and Plaintiff requested a union steward. Because a union steward was not immediately available, Creten agreed to move Grimes to another work area if Plaintiff agreed to forget about calling the union representative. Additionally, around this same time, Plaintiff learned that a representative from the Employee Assistance Program (EAP) had been to the AMF facility on a day Plaintiff was not working to speak with individuals about the conflict with Grimes. Plaintiff was upset she had not been informed about the visit.

According to Plaintiff, Grimes continued to harass her over a two-and-a-half-year period. Grimes's conduct included trying to bump into Plaintiff when they would pass one another on the workroom floor or in the restroom, placing mail trays in Plaintiff's path on the workroom floor, and altering her break schedule so that she would be in the break room with Plaintiff to "direct hostile or harassment behavior toward her." In her 2009 EEOC complaint, Plaintiff cited an incident where Grimes tried to provoke her by leaving the conveyor belt at the same time as Plaintiff and walking in the same direction.

On May 12, 2009, two Health & Resource Management employees, Jean Tucker and Deborah Miller, shared confidential medical information about a previous ear infection and psychiatric illness with Creten. Plaintiff asserts the release occurred in retaliation for her filing a compensation claim for stress and anxiety. The administrative record shows the Office of Workers' Compensation Programs requested additional information from Plaintiff's supervisors about her medical issues. In response to this request, Miller sent the appropriate forms[3] to Creten.

---

[3] The forms included workers' compensation documents that required a supervisor to complete them and a blank Department of Labor form related to psychiatric illness.

[3]

In addition to the issues with Grimes, Plaintiff has cited a number of incidents with other co-workers, which she also addressed in her complaints to the EEOC. On May 27, 2009, co-worker Bobby Pittman[4] intentionally bumped his shoulder into Plaintiff. Later that evening, Plaintiff asked Creten, the supervisor on duty, to come out to the concourse. Plaintiff then yelled at Pittman not to bump into her "with [his] ignorant ass" again. Creten requested Plaintiff write a statement about the incident, but she declined. That same night, co-worker Richard Boyd[5] came over to work near Plaintiff, ostensibly to "cause trouble" with Plaintiff. After Plaintiff told Boyd not to "come up here fucking with me," the two had a verbal altercation and Boyd gestured as if he was going to hit Plaintiff. Creten told Plaintiff to go into his office and calm down. After attempting to call a Union Steward, Couch dialed 911. Police responded to AMF, but no charges were ultimately filed. After this incident, Plaintiff went on medical leave through September 29, 2009 due to work-related stress. The record shows a number of statements were taken from co-workers who were involved in or witnessed that night's events.

Upon her return on September 30, 2009, Plaintiff had successfully applied for a level seven position, which involved a bump in pay. (Couch depo. pp. 47-48.) However, Plaintiff asserts that she continued to be harassed by co-workers, including Grimes, Pittman, Boyd, Larry Tinkle, Mary Kaye Johnson, Ron Nance, A.J. Johnson, Vincent Saniel, and Victor Owen. For example, Johnson made "extremely unpleasant and hurtful comments" to Plaintiff, Nance threw a box of mail at Plaintiff, Johnson would "call [Plaintiff] psycho bitches and so forth" and yell verses of songs in Plaintiff's ear "constantly," and several co-workers would attempt to bump into her.

---

[4] Pittman is a white male.
[5] Boyd is an African American male. He is a casual employee.

Plaintiff says although members of management witnessed or knew about her co-workers' actions, they did not respond adequately or promptly to them. Conversely, Plaintiff asserts that when male employees[6] had confrontations with co-workers, management handled their issues immediately. The USPS has a zero-tolerance policy against workplace violence.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

---

[6] Plaintiff specifically references Jason Frances, Bobby Pittman, Woodrow Perry, Roby Kishner, all Caucasian males; Walter Hendrickson, an African American male; and Jay Castillo, a Hispanic male.

## DISCUSSION

### I. Race and Gender Discrimination

Plaintiff asserts claims of race and sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Under Title VII, it is "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Defendant argues that Plaintiff has failed to meet her burden of proof under Title VII. Plaintiff asserts she has presented enough evidence to survive a motion for summary judgment.

In a Title VII action, the burden is on the plaintiff to establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff may prove his or her case through direct or circumstantial evidence of discrimination. *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1246 (6th Cir. 1995); *Henry v. Ohio Dept. of Mental Retardation & Developmental Disabilities,* 162 F. Supp.2d 794, 799 (S.D. Ohio 2000). No direct evidence of discrimination exists in the present case. "In the absence of direct evidence ... Title VII claims are subject to the familiar burden-shifting framework set forth in *McDonnell* ... as subsequently modified in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)." *Risch v. Royal Oak Police Dept.,* 581 F.3d 383, 390 (6th Cir. 2009). Under *McDonnell,* after the plaintiff has established a prima facie case of discrimination, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. 411 U.S. at 802. If the employer demonstrates such a reason, the burden shifts back to the plaintiff to show that the stated reason is in fact pretext for unlawful discrimination. *Id.* at 804. The burden

of persuasion remains with the plaintiff at all times. *Risch,* 581 F.3d at 391 (citing *Burdine,* 450 U.S. at 253).

To establish a prima facie case of discrimination, the plaintiff must demonstrate that she (1) is a member of a protected class, (2) was qualified for her job, (3) suffered an adverse employment action, and (4) was treated differently than similarly situated non-protected employees. *See, e.g., White v. Baxter Healthcare Corp.,* 533 F.3d 381, 391 (6th Cir.2008). The plaintiff must at least establish an inference of discrimination. *Id.* (citing *Burdine,* 450 U.S. at 253).

Defendant does not dispute that Plaintiff has satisfied the first two prongs. However, Defendant first argues that Plaintiff has not shown she was subjected to an adverse employment action. An adverse employment action constitutes "a materially adverse change in the terms and conditions of employment" that is "more disruptive than a mere inconvenience or an alteration of job responsibilities," such as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Hollins v. Atlantic Co., Inc.,* 188 F.3d 652, 662 (6th Cir. 1999) (citation omitted). This Court looks to whether a particular employment action was "objectively intolerable to a reasonable person," rather than an individual's subjective impressions, in order to determine whether an employment action was materially adverse. *Policastro v. Nw. Airlines, Inc.,* 297 F.3d 535, 539 (6th Cir. 2002). "In short, the action must have a 'significant detrimental effect' on the employee's status as evidenced by objective factors, not subjective impressions." *Freeman v. Potter,* 200 Fed. App'x. 439, 442-43 (6th Cir. 2006) (internal quotation omitted). Importantly, this standard filters

[7]

out claims establishing merely a "bruised ego" or a "mere inconvenience." *White v. Burlington N. & Santa Fe Ry.,* 364 F.3d 789, 802 (6th Cir. 2004) (en banc), *aff'd,* 126 S.Ct. 797 (2005).

Plaintiff has not shown she suffered an adverse employment action. Plaintiff has not been demoted, discharged, or lost benefits or duties. To the contrary, Plaintiff applied for and received a higher level job with better pay. Instead, Plaintiff asserts that "being forced to go to a threatening work place was a change in status" that qualifies as an adverse employment action. First, while Plaintiff correctly contends that the list explicated in *Hollins* is not exclusive, a plaintiff must show an employer's action had a significant detrimental effect on the employee's status. The facts in this case, when viewed in a light most favorable to Plaintiff, still fail to satisfy this burden. Second, even if the Court were find that Plaintiff's conflicts with her co-workers constituted an adverse employment action, although it is clear that Plaintiff did not get along with many of her co-workers, Plaintiff points to no evidence that would suggest such conflicts, many with those of the same race and/or gender as Plaintiff, were because of her race or gender.

Furthermore, Plaintiff has not offered evidence that she was treated differently than a similarly-situated person outside the protected class. In order for two or more employees to be considered "similarly-situated," the Plaintiff "must prove that all of the relevant aspects of [her] employment situation are 'nearly identical' to those of the [non-protected] employees who he alleges were treated more favorably. The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances." *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir.1994). As to what constitutes "all relevant aspects," the Sixth Circuit has said that courts "should make an independent determination as to the relevancy

of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998).

First, although Plaintiff has pointed to conflicts between other employees that she claims were handled more quickly by management, she has offered no evidence as to why her employment situation is "nearly identical" to those of the co-workers she cites. Richard Boyd, for example, is a casual employee, and thus not protected by the Union and subject to different scheduling than permanent employees such as Plaintiff. Further, the facts show that management did not ignore Plaintiff's complaints. Plaintiff's supervisors interviewed witnesses and took statements, and only after investigating Plaintiff's complaints determined that they required no further action.

Finally, assuming *arguendo* that Plaintiff could prove her prima facie case, Defendant has offered a legitimate, non-discriminatory reason for any limited response to the incidents between Plaintiffs and her co-workers. Plaintiff's supervisors testified that they handled her complaints no differently than they handled the complaints of other employees. As stated above, management initially responded to Plaintiff's complaints and only discontinued their investigation after determining no further action was required.

Thus, Plaintiff must show pretext. To satisfy this burden, plaintiff must show by a preponderance of the evidence that the proffered reason (1) had no basis in fact, (2) did not actually motivate the decision, or (3) that is was insufficient to motivate the decision. *Briggs v. Potter*, 463 F.3d 507, 516 (6th Cir. 2006). A plaintiff may not show pretext by merely questioning her employer's business judgment. *Chappell v. GTE Products Corp.*, 803 F.2d 261 (6th Cir. 1986). Plaintiff points to no reason to doubt the authenticity of management's

explanation, and the facts support management's explanation. Plaintiff cannot show pretext. Plaintiff's discrimination claim fails.

## II.     Hostile Work Environment

A plaintiff may establish a prima facie hostile work environment claim by showing that (1) the plaintiff "is a member of a protected class;" (2) the plaintiff "was subjected to unwelcomed racial [or sexual] harassment;" (3) "the harassment was race [or sex] based;" (4) "the harassment unreasonably interfered with [the plaintiff's] work performance by creating an environment that was intimidating, hostile, or offensive;" and (5) "employer liability." *Clay v. United Parcel Serv., Inc.,* 501 F.3d 695, 706 (6th Cir. 2007) (citing *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999)). Further, a hostile work environment is one "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams v. General Motors Corp.,* 187 F.3d 553, 560 (6th Cir. 1999) (citing *Harris v. Forklift Systems,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (citations and quotation marks omitted)).

To establish a hostile work environment claim, a plaintiff must show that his work environment was both objectively and subjectively hostile. *Slayton v. Ohio Dept. of Youth Servs.,* 206 F.3d 669, 678 (6th Cir. 2000). An objectively hostile work environment exists where a "reasonable person in the plaintiff's position, considering all the circumstances" would find the environment hostile. *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81 (1998) (internal citations omitted)). Courts look to the following factors to determine whether an objectively hostile work environment exists: the frequency of the discriminatory conduct; its severity; whether it is physically threatening, humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance. *Id.* at 678-79 (citing *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 789-90 (6th Cir. 2000)).

Plaintiff argues that the fact that the "bullying hostility and threats … continue[d] for a period of over five years certainly meets the severe and pervasive test." To the contrary, Plaintiff cites a handful of incidents that include her co-workers purposefully walking in the same direction as her, acting as if they would (but not actually making) physical contact with her when passing her in the workplace, bumping shoulders or elbows with her, and singing songs in her ears. The conduct here was not continuous, but instead is comprised of a few notable incidents over a five-year period. These minor incidents over a span of five years far from demonstrate an objectively hostile work environment, especially considering management responded to the incidents and Plaintiff participated in the hostility. Furthermore, as discussed in section I., *infra*, Plaintiff can point to no evidence that these isolated incidents were based on her sex or her gender. Rather, in a deposition, Plaintiff hypothesized that the casual employees were jealous of her because she had obtained a permanent position with the USPS. (Couch depo. pp. 126-27.) Plaintiff has not pointed to acts that rise to the level of an abusive working environment. Her claim for hostile working environment must fail.

### III.     Retaliation

Under a Title VII retaliation claim, a plaintiff may prove his or her claim through direct or circumstantial evidence. *Henry v. Ohio Dept. of Mental Retardation & Developmental Disabilities,* 162 F. Supp.2d 794, 800 (S.D. Ohio  2000). The Court finds no direct evidence of retaliation. Absent direct evidence, the Court follows the *McDonnell Douglas* balancing test. *Id.; McDonnell,* 411 U.S. at 802. "[T]o establish a *prima facie* case of retaliation, a plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights

[11]

was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Abbott v. Crown Motor Co.,* 348 F.3d 537, 542 (6th Cir. 2003); *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000).

The anti-retaliation provision only "protects an individual ... from retaliation that produces an injury or harm," but the United States Supreme Court has recently held that "the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment," or only those acts that occur at the workplace. *Burlington Northern & Santa Fe Ry. v. White,* 126 S.Ct. 2405, 2412-14 (2006). In modifying the third element of the prima facie case, above, the Court held that a plaintiff "must show that a reasonable employee would have found the challenged action *materially adverse,"* meaning "'it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 2415 (quoting *Rochon v. Gonzales,* 438 F.3d 1211, 1219 (D.C. Cir. 2006) (internal quotations omitted)) (emphasis added). The causal connection must be proven by sufficient evidence to demonstrate an inference that, had the plaintiff not engaged in his protected rights, the defendant would not have taken the adverse action. *Id.*

As discussed above, Plaintiff has not shown that her supervisors subjected her to any adverse employment action. First, there is absolutely no evidence that suggests her co-workers behaved as they did because they learned Plaintiff had filed EEOC complaints in the past. Secondly, Plaintiff's claim that management's "inaction" in the face of "a harassing and threatening environment surrounded by bullies" was an adverse employment action is similarly flawed. The record is replete with evidence that her supervisors did in fact respond to Plaintiff's conflicts with her fellow employees. Finally, Plaintiff also fails to offer explanation as to how

Miller's distribution of medical documentation affected the terms of her employment in a materially adverse manner.

Assuming, *arguendo*, that Plaintiff satisfied her prima facie burden, as discussed above Plaintiff cannot prove that Defendant's explanation about their investigation was pretextual. Further, Miller explained that she distributed the medical documentation in conformance with normal protocol, at the behest of the state workers' compensation board. Plaintiff offers no reason this explanation is pretextual or untruthful. Plaintiff's retaliation claim must also fail.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. An appropriate order shall issue.


CC:     Counsel